Council, would you like to reserve some time for rebuttal? Well, I would, Your Honor. I'd like to reserve two minutes for rebuttal, please. Good morning. My name is Richard Zack, and I represent the government in this case. In this case, the district court failed to consider five of a criminal defendant's prior convictions as part of his criminal history in calculating his sentence. All five of those convictions were within ten years of relevant conduct to the offensive conviction, namely the defendants being found in the United States in August of 2005. And what the district court's error had the effect of doing was reducing the defendant's criminal history score from a 5 to a 3, and reducing his guideline range to 46 to 57 months, from 70 to 87 months. The district court's finding and legal conclusion is at odds with six other circuits that have decided... Yeah, but the real question is, is it at odds with the third circuit, right? That is the question, Your Honor. I don't know the answer, but I'm quite sympathetic to the district judge. I mean, it's a question of why you read third circuit precedent. I guess that's the issue here, right? Your Honor, if you read those two cases carefully, the De Santillo case as well as the Lennon case, let me address De Santillo first. That case is clearly not applicable to this situation. First of all, in this case, this case is a relevant conduct case. It deals strictly with the application of the sentencing guidelines and the definition of relevant conduct under 1B1.3. De Santillo dealt only with whether a crime is a continuing offense for purposes of the statute of limitations and when the statute of limitations begins to run. Well, it's similar in the sense that the definition of relevant conduct involves a time period, right? Well, Your Honor, what the definition... So in that sense, at least, it's similar. The question is, is it close enough to the limitations question to be binding? Your Honor, what relevant conduct says is all conduct that is in preparation for the offense or committed during the commission of the offense must be considered in order to determine the date of the commencement of the offense for determining a defendant's criminal history. What De Santillo did not consider because the guidelines... No, no, no, wait a minute. I thought we were talking about, you know, the prior convictions. We are, Your Honor. And the question is, how far can you go for prior convictions? That is correct. All right. And what the guidelines require is to... The first thing you have to do to determine whether something is relevant conduct is when the instant offense commenced... Right. ...and where relevant conduct starts the clock ticking. Is it where relevant conduct started or where the offense started? It's where the relevant conduct to that offense, how far back that goes. And, Your Honor, there have been six circuits that have considered this issue that have held that the reentry, the defendant's reentry into the United States illegally starts... That's relevant conduct to the defendants being found in. Now, let me go back to De Santillo. As I said, that was not a relevant conduct case. And what that case addressed was a situation very different from this situation, a situation where a defendant presents himself at a recognized point of entry using his real name, reenters the United States illegally, and is charged with reentering illegally, a different offense than the defendant in this case is charged with, and a different set of facts. That case is clearly inapplicable for that reason because it did not address a found in offense. It addressed an illegal reentry offense, and the issue there was whether the clock starts to run, for statute of limitations purposes, upon the defendant's reentry. And, in fact, in De Santillo, the court says that that situation is in marked contrast to when a defendant enters, basically sneaks into the country, which is what the defendant, Hernandez-Gonzalez, did in this case. Now, the other case, Judge Teshim, I believe that you were referring to is the Lennon case, which is also inapplicable here because a careful reading of that case discloses that the court decided simply that even if you accept what the defendant advocated for, that it would affirm the sentence because any error was harmless. Because even if you agree with the defendant, the defendant would have received the same sentence. So it did not reach the issue. Accordingly, everything it said about De Santillo was dicta because it was not necessary to the opinion, and the panel in that case, I believe, inaccurately stated, incorrectly stated, that De Santillo dealt with a found in situation similar to the facts before the court in Lennon, which was not the case. The Lennon court, or the De Santillo case, as I said, dealt only with that illegal reentry. And there's a Third Circuit case before Lennon, the Dixon case, where a defendant tried to argue that essentially no violations of Section 1326, the illegal reentry statute, are continuing offenses. And the panel in that case, in the Dixon case, rejected that argument and said basically that De Santillo dealt only with the reentry offense involved in that situation and did not make any finding with respect to whether a found in offense is a continuing offense. On another topic, what we have here is the pre-sentence report, which is, I think, somewhat ambiguous, but it does mention, look, everyone agrees, going on a timeline, we've got January 1st, 2000, and then we've got the date he was picked up. The pre-sentence report appears to say two times within that particular time period he left the country again. Does that mean there are three chargeable offenses there, if that's to be believed? Your Honor, what your question illustrates is why this case must be remanded. And it must be remanded because relevant conduct is a factual determination. And the court did not have the opportunity to decide whether those two alleged returns to Mexico would have cut off the relevant conduct in this case. The court did not do that because the defendant took the opposite position, as he takes now in his appeal in the district court. The defendant agreed that he had reentered the United States on January 1st, 2000. And repeatedly, if you look at the sentencing hearing transcript, there was no mention whatsoever of those two returns. And defense counsel and the government and everybody agreed that the return occurred in January of 2000. Just if you can follow me on this. So you've got January 1st, 2000, and you've got what he's picked up in August of 2005, okay? It seems to me your indictment starts, I guess, at the 2005 date and says he arrived in the country at some other point. Isn't that date the time most recent to 2005 when he charged? And isn't that the date that's going to really tell us whether those other offenses are going to be part of his criminal history? Your Honor, the government's position is with respect to determining what is relevant conduct in this case is that the district court has to make a factual finding as to what is relevant conduct. Now, what the district court held was under no circumstances that exist today could an illegal reentry be relevant conduct to being found in. The court said that is not possible under Decentillo and Lennon. Basically holding a black letter, a dark rule that there is no chance that a reentry could ever be. Why don't we go the other way? All right, let's assume that. Okay. Then it's got to be sent back for fact-finding as to when he reentered. Yes, Your Honor. This last time, the one you charged. Yes, Your Honor. And what we would argue is that, Your Honor, that the district court has to make a factual finding. Is there a difference between someone who comes to the United States in January of 2000 and comes to live here, to reside here illegally after having been deported following his sexual assault conviction, potentially possibly leaves the country twice for brief visits to his parents and comes back to his residence in the Philadelphia area? Is that initial illegal reentry, which the defendant is the one who identified. But it's in January 1st, 2000. Yes. He said, that's when I came back to the United States. The factual question for the district court would be, in which the district court did not use this analysis, would be, do those two visits, do they break the relevant conduct chain? And that analysis did not occur. What occurred here was the district court said, look, there aren't any circumstances where any entry would ever be relevant conduct to being found in the United States. And the cases that relied on, as I've said, are not applicable. They simply do not address the relevant conduct issue. And if you look at Lennon, Lennon doesn't, I believe, even mention the term relevant conduct. The other circuits that have actually decided this issue, and there are six, the 5th, the 11th, the 8th, 7th, 9th, DC, and 5th circuits, have all held. I'm sorry, I'm still confused by your continued reference to relevant conduct. Are we talking about criminal history? Yes, Your Honor. But the guideline says it's computed from defendant's commencement of the instant offense, not relevant conduct. Instant offense. If you look at Application Note 8, Section 4A1.2, and 4A1.2 is the criminal history calculation section of the guideline. Application Note 8 says commencement of the instant offense includes relevant conduct. Which means that you go back then to 1P1.3 to look to see what is relevant conduct to the instant offense. And that's what you use to calculate how far back you look. Okay, so Note Point? Application Note 8, I believe. Section 4A1.2. Eight. And if you, each of those cases, those circuits that I mentioned and that are cited in my brief, discuss this very issue. They discuss relevant conduct and how you determine the commencement of the instant offense. And they talk about how the illegal reentry, the actual illegal reentry, has to be considered by the district court because the being found in offense could not have occurred without the illegal reentry. And, in fact, the Fifth Circuit addresses the very issue, Your Honor, that Judge Chigaris raised. It talks about someone who repeatedly reenters the United States. And in that case, in the Fifth Circuit case, the Alvarado case, the defendant had entered and left a number of times and had been prosecuted for those, I think there were five reentries and four prosecutions. And then had come back to the United States and left a number of times and came back and was found in the United States and finally prosecuted for that. And what the Fifth Circuit said was that the only time going and coming breaks up the relevant conduct chain is when the defendant is prosecuted, arrested and prosecuted in between the entries. The Fifth Circuit held that you could have a situation where you have some entries and leaving and being found in at a later time. And all that is relevant conduct for purposes of determining criminal history. And I see my light is on and I will save my time for a moment. Thank you, counsel. May it please the court. My name is David McCauldin. I'm the attorney arguing on behalf of Magdaleno Hernandez-Gonzalez. The criminal history was correctly calculated. This court does not have to reach the De Santillo-Lennon issue. This court can conclude even based on the government's argument that it was correctly calculated because the government never established when the most recent reentry was or how long the visits to Mexico were. And those were undisputed. They're stated in the pre-sentence report in paragraph 38. It's completely undisputed that there were at least two visits back to Mexico. So the government simply hasn't met its burden, even under its argument, of showing that the most recent reentry was before 2003 or that the prior reentries should somehow count as relevant conduct. Plus the government never objected to the pre-sentence report either, right? That's correct. They never objected to the pre-sentence report. And it's stated very clearly in paragraph 38. So this court, even though the district court did not resolve the issue on that ground, this court is free to resolve the issue on any ground in affirming the district court. So I think it's crystal clear, based on the record, that even the government's argument would not be supported. Isn't it true, though, counsel, that there's a discrepancy? It appeared to me that the parties were like planes flying at different altitudes, that there was an assumption that this stipulated date of January 1 was stipulated, but then later your argument is, well, no, it wasn't. We've got these two reentries. What troubles me is there's no real record. I shouldn't say no real record. There aren't any findings. It doesn't appear to be that this issue was joined the way it should have been joined below to give the district judge an opportunity to make findings of fact as to exactly what the appropriate date was. Well, it's correct the district court did not make those findings, and that's because the district court resolved the issue based on the De Santillo and Lennon principle that founding is not a continuing offense. And she marked the critical time as being when the founding actually took place in May of 2004. So she never reached the issue of when the most recent reentry was. If we clarify the law, then wouldn't you agree that then remand might be a good idea to have this clarified, to have some fact-finding in this area? I would certainly not object to a remand on that issue, Your Honor, as well as on the second issue. Well, in other words, let me ask a further question along the same lines. In other words, if we were to conclude that the case law in all the other circuits, which Mr. Zak mentioned, is correct on this issue, then this sentence is erroneous, isn't it? This panel cannot reverse a prior panel decision. I said if we conclude that all the other circuits are correct on this issue, and there's no case in this circuit that directly addresses this issue, then the sentence is erroneous, isn't it? Legally, as a matter of law, we'd have to vacate and remand. No, it's not erroneous because this court can affirm on any ground, even a ground that the district court did not reach. And the factual ground this district court can affirm on is the fact that the government never established that the most recent reentry prior to being found in occurred in 2003 or earlier. And that's a predicate, that's a necessary predicate for their argument in order for them to succeed in showing that the sentence was erroneous. If they can't show that, they can't show error, and this court should affirm. And that's why I argue that this court doesn't have to reach the De Santillo-London issue. This court can simply look at the fact that, as Your Honor has stated, the government never objected to the pre-sentence report, never objected to the clear statement in paragraph 38 that there were at least two visits back to Mexico where Mr. Hernandez-Gonzalez's parents were living. Where does it say they were in Mexico? It says that they were residing in Mexico. Now, the government does. How do we know those visits didn't occur in Florida, Brownsville, Texas? Well, we have to give a common-sense reading to this, Your Honor. If we read this in context, there is no other reasonable interpretation of this. We have his parents. His mother is a housewife and his father is a retired farmer. They still reside in Mexico. Next sentence, the very next sentence. What paragraph are you looking at? I'm looking at page 8 of the pre-sentence report. This is paragraph 38. Go ahead. Paragraph 38, and it's the last two sentences that are critical here. The government is trying to force them in a way that just doesn't make sense. The last sentence then says, he said that he has maintained regular contact with his parents by telephone and he visited them on at least two occasions since he illegally re-entered the United States after his deportation. If he is visiting them and they reside in Mexico, obviously the visits took place in Mexico. That's the only common-sense interpretation of this pre-sentence report. It doesn't mean anything else. It may be the most likely interpretation, the most plausible interpretation, but what's the harm in requiring a district judge to join the issue and make factual findings on this? Again, these facts seem to be so critical to both of your respective arguments. Why not have a full hearing on the record and give the district judge a chance to make findings susceptible to thorough review by this court? Your Honor, I would have no objection to that. I certainly understand that the record perhaps is not as clear as we would like because the district court ruled on alternative grounds. If the court would like the district court to rule expressly on these grounds and decide the factual issue, I think a remand would be appropriate. I would not object to that. And I would also note that I think that would also give the government, rather the district court, a chance to address the fast-track issue, which I think has become refined in light of this court's decision in Vargas. Well, it's not foreclosed because of Vargas? It's not foreclosed because of Vargas. Vargas expressly limited its ruling to the conclusion that fast-track disparity is not unwarranted disparity under 3553A6. Now, that ruling is parallel to the ruling of this court in the Parker case where the court addressed co-defendant disparity, and the court likewise said co-defendant disparity is not unwarranted disparity under A6, but then went on to state that the court can consider co-defendant disparity in sentencing under the other factors that exist in 3553A. Indeed, Vargas cites to Parker, and I believe it's footnote 11 in Vargas. So Vargas has limited its holding to that specific holding, as Judge Ambrose stated in his concurrence in the denial of en banc review in Vargas. So if we read Vargas together with Ambrose's concurrence together with this court's decision in Parker, we can see that Vargas is limited. Now, where the district court made its mistake was she was correct in saying that, OK, I can't consider this as unwarranted disparity. But she went a step further and said, and I can't consider it as any basis for sentencing outside the guideline range. And in doing that, she committed broker error because she said, this is a factor I really want to consider. I am concerned about the fact that there are defendants in exactly this gentleman's position who are getting much lesser sentences. And I want to consider that. But I can legally only consider that in sentencing within the guideline box. She felt herself boxed in by that. That is broker error. That is Gunter error. Gunter says that in step three, the guidelines are advisory. At that point, the sentences, the guidelines are considered as one factor. The court can consider all other factors. I think you're almost saying that this sentence in Vargas doesn't mean what it says, and I'm going to quote it. Today we follow the assembly circuit. Today we hold the district court's refusal to adjust a sentence to compensate for the absence of a fast track program does not make a sentence unreasonable. It's pretty broad, isn't it? Your Honor, we're not dealing with that factual situation. It's not that she did not want to consider the factor. That ruling is, if we look at the exact language in Vargas, it's saying that it's limited to 3553A6, which requires district courts to consider disparities. And we hold that the disparity between fast track and non-fast track districts is authorized by Congress and, hence, is warranted. So the holding is entirely limited to A6. Now, it would be a violation. Because the next sentence is, in addition, we agree with the district court that on the 3553A6 claim. So that's in addition. See that? I'm just looking for exactly where you are, Your Honor. I'm at the bottom of page 99, carrying over to page 100. Today we follow the second and fourth circuits. In addition, we agree with the district court when addressing Vargas' 3553A6 claim. I know. So that's in addition. You see, it's going beyond that preceding sentence. So it's not limited to 3553A6 the way I read it. Well, Your Honor, then it would be a violation. I think that's an overly broad reading of Vargas. I think that that would be inconsistently Parker. Because in Parker, this court made clear the same point in regard to codefendant disparity, that that is not unwarranted disparity. This court in Vargas cites to Parker, and Parker stands for the principle that codefendant disparity can be considered under one of the other factors. Likewise, fast-track disparity, although it's not unwarranted disparity for purposes of A6, it can be considered under one of the other factors. For example, it can be considered under the factors, the parsimony provision, whether or not a sentence of 30 months would be sufficient but not greater than necessary to meet the purposes of sentencing. It's clearly relevant to that. And nothing in Vargas addresses that. Nothing in Vargas bars the district court from going on to address that. I just don't understand, counsel, how you claim that the judge committed Booker or Gunter error when she specifically, at page 149 of the appendix, noted that the guidelines are advisory. And it seemed to me from my reading of the record that although she couldn't make a guideline adjustment to your client's range based upon your fast-track argument, as I recall, she put them at the bottom of the range, and one of the reasons she put them at the bottom of the range was because she considered that issue and put it into the mix as one of the 3553A factors that she ought to consider. But she only felt free to do that within the guideline range. Where does it say that? Where does she say I must impose a sentence within the guideline range? She said at page 149 that they're advisory. That's a general statement, saying that they're advisory. But her specific statement as to the fast-track issue is on page 147. At the very bottom, she says, I'm just not persuaded as a legal matter that that's the kind of disparity that's met by 3553A. And she's correct on that part under Vargas. I'll concede that. That's correct under Vargas. But the next part of the sentence is, or that I otherwise should consider it, at least in the sense of departing from the guidelines. That's where she has committed a booker error because she's saying that on the fast-track issue, I can only consider that in sentencing within the guideline range. As a departure, but that doesn't mean she can't do a variance. This was before the circuit had distinguished between departures and variances. I grant you that, but she would not be the only judge within the circuit to appreciate the important distinction between a departure and a variance before this court articulated it in written opinion. But we know that she's using departure in the broad sense because then on page 153, she makes her point clear. She says, but I'm going to consider it, and that's the fast-track issue. When I sentence him within the guideline range, she's already said I can't consider it in sentencing outside the guideline range, but I am going to consider it when I sentence within the guideline range because I am concerned, as I said, that we have people who may be in exactly this gentleman's position getting a much lesser sentence. So she is feeling boxed in by those guideline boundaries in terms of the fast-track issue. Now, maybe that she's also said that, okay, on other issues, the guidelines are advisory. But on this issue, she is saying she's boxed in. I guess I just read it differently. I read it that at that point she had concluded that a guideline sentence was appropriate for your client, and she put him at the bottom of the range in part because of this issue. So she gave him some credit, but didn't give him as much credit as you would have liked. But on this issue, she was free to consider it as a basis for going below the guideline range, and she just didn't recognize her authority to do that because she said, as a legal matter, I can't do that. Page 147, she says, as a legal matter, I can't do that. Page 153, she says— I can't do a departure, she said. She says, I can't— Isn't that a correct statement of the law? She had no right to do a guideline departure in light of the fast-track argument. Well, but, Your Honor, this is all coming up in the context of a variance argument anyway. So this was never raised as a departure. So her reference to departure is clearly in the broader sense of differing from the guideline range, first of all. Second of all, she then never discussed this as a variance. So that's even under your interpretation. Just before that, on 147, she says, that's not the kind of disparity that, you know, I don't think that 3553A covers. That's correct, and that's correct under Vargas. That portion is correct. I concede that. So she's saying, you know, I don't want to, you know, I don't want to give him a variance in the 3553A, and then she says, or, you see, it's not a correct departure. So she's—that's in the disjunctive. So she's considering both, don't you think? I mean, that's a fair reading. Well, she's saying as a legal matter. She's not saying I'm rejecting it as a matter of my discretion. She's saying as a legal matter, that's not the kind of disparity that's met. Or I otherwise should consider it, at least in the sense of departing from the guidelines. Since it's all part of the same sentence, and it's prefaced with the statement as a legal matter, that's not a discretionary ruling. I see that my red light is on. That's right. The remedy you'd seek would be resentencing. You meant for resentencing? That's correct. Thank you, counsel. Thank you, Your Honor. Just two points, very briefly. With respect to the issue about his having returned to Mexico during the time between January 2000 and August of 2005, I refer you to page 103 of the supplemental appendix in which the government stated, add the sentencing. Everybody in the United States, everybody agrees that he returned to the United States on January 1st, 2000. The district court, during the sentencing, then invites the defendant to argue or uses an example of someone who continually reenters the United States and goes back to their native country. And the defendant makes no statement that he is one of those people. It is clear that the only date at issue and the only reentry date that all the parties considered was January of 2000. With respect to the fast-track departure issue, what happened was, and the only fair reading of this record, is that the district court fully considered this issue and did it appropriately. The only thing the defendant raised as the basis for being granted a sentence below the guidelines was that there is this apparent variance or this apparent disparity. Does the Vargas case doom his argument? Your Honor, it forecloses it in this case because that's the only basis that the defendant raised. Not I'm a good guy or here are some mitigating circumstances about me that make me a candidate for a variance. The only thing the defendant said was there's a disparity here. And you can see why the district court would not want to give a defendant like this a sentence below the guidelines. And clearly the court did consider that it did have the authority to go below the guidelines as a variance and specifically said the guidelines are advisory. But this is a defendant with a lengthy criminal history including a very brutal and violent sexual assault. And the defendant did essentially nothing to address that in his variance. And simply said that there is this disparity. Give me a break. Sentence me below the guidelines. And district court properly rejected that as the basically as the defendant's only argument on that issue. Thank you, counsel. We'll take the case under advisement. And thank you, counsel, for your arguments and briefs. Thank you.